REGAN, Judge.
Plaintiff, Lawrence Patke, a siding applicator, instituted this suit against the defendant, National Surety Corporation[1] the insurer of Jefferson Home Improvement Company, endeavoring to recover workmen’s compensation at the rate of $35 per week for 400 weeks for total and permanent disability, caused by a post traumatic neurosis ultimately resulting from a back injury initially incurred on June 11, 1958, when he and a helper attempted to remove a hot water heater from the side of a house so as to apply siding to that area thereof. Plaintiff also prayed for penalties and attorney’s fees.
Defendant answered and admitted the occurrence of the accident, but denied that plaintiff suffered any disability as a result thereof after August 27, 1958, the date on which he was discharged by Dr. Irving Redler, an orthopedist, as able to fully resume his former employment.
From a judgment awarding plaintiff compensation at the rate of $35 per week for 400 weeks[2], and medical expenses of $195-75, the defendant has prosecuted this appeal. Plaintiff answered the appeal and requested the imposition of penalties and attorney’s fees.
The record reveals that the plaintiff and a volunteer helper were engaged in moving a water heater away from a wall in order that siding might be applied to that area thereof when the helper stumbled, which caused plaintiff to fall while bearing the full weight thereof and thus injure his back. Plaintiff remained on the job for a brief interval after the accident but was forced to leave after experiencing acute pains in his back.
After the accident, plaintiff related that he continued experiencing this acute pain *860 and in an effort to alleviate the condition, he consulted Dr. George Morlier, who gave him an injection the same day. He visited this same physician several times thereafter. He was later treated by Drs. Houston, Faust arid Roy, by Dr. Byron Soboloff, by Dr. Redler, and three weeks after the accident, he consulted doctors at the Buie Clinic in Marlin, Texas. His injury was diagnosed as a strain of the right erector spinae muscle at about the level of the first lumbar vertebra. There were, however, no further findings of physical disability after August 27, 19S8, and therefore, this phase of plaintiff’s injuries are not now in dispute.
In any event, plaintiff related that he continued to suffer pain in his back to such an extent that he was unable to accept work involving the application of siding; or if he did accept this work, he was unable to complete it. He asserted that he was afraid to accept jobs involving two-story residences which would require him to mount a scaffold, since he was fearful that a recurrence of the back pain might cause him to lose his balance and fall. In addition to accepting jobs requiring the application of siding to one-story houses, he was forced to accept work caulking windows, which, of course, was less lucrative and less desirable, but one that placed less strain on his back and which did not require climbing.
Plaintiff, because of intermittent pain, was unable to work generally more than a few hours each day. On one occasion he worked as long as seven hours. He constantly wore an aluminum back brace during the day, and sometimes at night; at other times he found it necessary to sleep on the floor or to place a board under his mattress in order to alleviate the severity of the pain.
His wife testified that as a result of her husband’s diminished earnings the family income dropped from about $5,000 to about $2,000 per year, and in consequence thereof, it became necessary for her to return to work and to expend the savings of their children.
Several persons engaged in the contracting business testified that they were familiar with the work of a siding applicator, and particularly plaintiff's work, having had occasion to use his services frequently in the past. They uniformly asserted that he was a first class siding applicator, who had never to their knowledge refused work unless he was otherwise employed, but after June 1958 he hadi often turned down lucrative work, explaining that he was physically unable to do it-They related that on other occasions plaintiff undertook to perform certain jobs but had to discontinue before completing the work because he complained of pain in his back.
In the course of the trial hereof only two medical experts testified, and they were Dr. Arthur W. Epstein, a specialist in neurology and psychiatry, who appeared on behalf of the plaintiff, and Dr-Clayton Edisen, a specialist in psychiatry,, who appeared herein on behalf of the defendant.
Dr. Epstein testified that he is a duly qualified neurologist and psychiatrist and! a fellow in the American Psychiatric Association; that he examined plaintiff in January and June of 1959, which revealed that there was nothing wrong with the-plaintiff physically; however, he found evidence of psychiatric disturbance, which he classified as a post traumatic neurotic reaction, induced by plaintiff’s injury in-June of 1958. He reasoned that the disturbance stems from a fear of recurring injury and that objective factors supported this conclusion, such as frequent visits to doctors when there was nothing organically wrong, his continuous use of a back brace and sleeping board, his prior good work record, and the fact that he has accepted a decrease in earnings of at least $3,000-annually at a time when his family obviously required much more income to support them.
*861 The evidence adduced on behalf of the defendant consisted principally of motion picture films and of the testimony of Dr. Clayton Edisen. He related that he is a practicing psychiatrist, although he had not, at the time of the trial in the lower court, been certified by the American Board of Psychiatry, but that he had been notified that he was eligible to take the examination. He said that he had examined plaintiff one time, and that was on June 5, 1959. He made a written report thereof to the insurance company, which was dated June 15, 1959, wherein he stated that he was of the opinion that plaintiff was suffering from a post traumatic reaction as a result of a prior injury incurred in 1951, and that there could have been some aggravation thereof resulting from the most recent accident in 1958.
In any event, his present opinion, which was expressed in the course of the trial on July 6, 1959, is that plaintiff is a malingerer ; this conclusion was based largely on the films introduced in evidence by the defendant, which show plaintiff working and also upon a conversation with the Pendleton detective who was employed to photograph the activities of the plaintiff. Dr. Edisen said that he did not write in his report, dated June 15, 1958, that plaintiff was a malingerer because he was fearful that he might subject himself to civil liability.
In any event, films taken by the Pen-dleton Agency on behalf of the defendant show plaintiff caulking windows on May 5th and applying siding to a single story residence in 736 Marigny Street in the City of New Orleans on June 2nd, 3rd and 4th, 1959, which is exactly the kind of work he consistently said he could do.
The record reflects a stipulation to the effect that if Mrs. Tranchina, the occupant and owner of 736 Marigny Street, were called as a witness, she would testify that plaintiff left the job incomplete because of back pains.
The question which was posed for the trial court’s consideration by virtue of the above factual résumé was whether plaintiff was totally and permanently disabled because of having incurred a post traumatic neurotic reaction as a result of the accident which occurred in June 1958.
The trial judge obviously was of the opinion that the plaintiff was totally and permanently disabled because of having incurred a post traumatic neurotic reaction following the accident.
The question which this appeal has posed for our consideration is whether that finding of the trial judge is so erroneous and unsupported by the evidence as to warrant a reversal by us.
Our examination of the record reveals that the foregoing conclusion of the lower court is fully supported by a preponderance of the credible evidence inscribed therein.
Of all of the witnesses who testified in this case, only one was in a position to actually know definitely whether the plaintiff is able to resume his former employment, and that is the plaintiff himself. The two medical experts produced by the respective litigants were in a position to express only their opinions. Whenever the experts are in substantial disagreement they are of little aid to the court and, therefore, we must endeavor to decide the case bn the record as a whole, giving greater weight to the lay testimony, the facts and environmental characteristics of the case, as well as to the conflicting opinions of the medical experts.
After a comprehensive analysis of all of the foregoing factors, including the honest testimony of plaintiff, his prior good work record, the amount of his earnings before and after this accident, and the nature of the injury incurred by him, we are constrained to believe that he has sustained the burden of proof and has established with that degree of certainty, or *862 reasonable probability, which the law requires, his claim of total and permanent disability.
We are, as we have so many times said before, fully cognizant of the caution which we must exercise in a case of this nature, in view of the nebulous characteristics of a neurosis; however, if plaintiff’s condition should improve in the future the defendant may avail itself of that provision [3] of the Workmen’s Compensation Act which affords it the' right to reopen this case after the lapse of six months.
The penalties and attorney’s fees requested by plaintiff should not be imposed upon the defendant insurer since there was nothing capricious or arbitrary in its refusal to pay plaintiff compensation after August 26, 1958, nor was the withholding thereof without probable cause.
We are, therefore, of the opinion that the judgment of the lower court is correct.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.

. Plaintiff initially instituted suit against Firemen’s Fund Indemnity Company, erroneously believing that it was the insurer of plaintiff’s employer. Upon discovering bis mistake, the plaintiff filed a motion to substitute National Surety Corporation as the defendant.

. Subject to a credit of ten weeks compensation previously paid, or $350.

. LSA-R.S. 23:1331.